UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HIMC CORPORATION, a Washington corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PREM RAMCHANDANI and Jane Doe Ramchandani; SHAI BAR LAVI and ANNA SACHS BAR-LAVI; AVI SIVAN and Jane Doe Sivan; AVRAHAM OVAIDIA and Jane Doe Ovaidia; and FIDELITY TRANSFER CO., a Nevada corporation,<br><br>　　　　　Defendants. | Case No. C07-5342FDB<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

**INTRODUCTION**

A temporary restraining order was entered in this case on July 18, 2007. A hearing on Plaintiff's motion for a preliminary injunction was held August 2, 2007, at which counsel for both parties presented argument.

Plaintiff HIMC (a small, publicly traded corporation traded over-the-counter) provides electronic check processing and credit card processing services. The Individual Defendants are also known as the "Veripay Group" (Veripay). Defendant Fidelity Transfer Co. is the transfer agent

ORDER - 1

having duties and obligations imposed by the Uniform Commercial Code, Article 8, as to the stock that is the subject matter of this dispute, as well as having duties with respect to the need imposed upon HIMC Corp. to seek injunctive relief if it contests the right of the individual defendants to obtain release from the Rule 144 restrictions on the unregistered securities at issue.  A "Stipulation and Order Re: Fidelity Transfer Co.'s Voluntary Compliance with Injunctive Orders" was entered August 2, 2007.

**PRELIMINARY INJUNCTION STANDARD**

To obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips in its favor.  *Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 314-15 (9th Cir. 1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979).  These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.  *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985).  *See also, Earth Island Inst. v. U.S. Forest Service,* 351 F.3d 1291, 1297-98 (9th Cir. 2003).  In certain circumstances, the public interest is also to be considered.  *Id.*

**DISCUSSION**

*Plaintiff's Contentions*

Plaintiff contends that Defendants offered a business venture with HIMC in which they, known as VERIPAY GROUP, would bring substantial new business to HIMC in exchange for the opportunity to purchase 1,364,667 shares of HIMC common stock below market price (at $0.01 per share).

In December 2004, Defendants agreed to purchase 689,228 shares under an initial agreement. Defendants then made four payments of $1,723.07 each for four purchases of 172,307 shares each of HIMC stock at $0.01 per share [4 X 172,307 = 689,228].  On about February 6-7, 2005, Defendants

ORDER - 2

1   agreed to pay an additional $79,261.22 for the earlier purchases of the 689,228 shares at the rate of

2   $0.125 per share.  The HIMC Board passed a resolution approving this sale on February 9, 2005,

3   and the sale was specifically tied to performance by the Veripay Group of its promise to generate

4   $100,000,000.00 in revenue within 24 months or else all of the stock issued would be forfeited and

5   returned to HIMC Corp.  HIMC contends that the inducement for issuance of the 689,228 shares of

6   stock was that Veripay represented that it had the capability of setting HIMC Corp up with QVC's

7   Home Shopping Network to generate new revenues for HIMC Corp.

8       Also on February 9, 2005, HIMC and Veripay entered into a "Memorandum of

9   Understanding" under which HIMC would purchase 51% interest in Veripay under certain

10  conditions:  Veripay Group's promise to generate $100,000,000.00 in revenue within 24 months.

11      On February 11, 2005, HIMC notified Fidelity Transfer Co., its transfer agent, to issue four

12  certificates for 172,307 shares each to the individual defendants, which stock was subject to a legend

13  restriction under 17 CFR § 230.144 (Rule 144) restricting the sale of the stock for two years.

14      Plaintiff HIMC contends that at no time since February 11, 2005 has any of the Defendants

15  paid HIMC any portion of the additional $79,261 needed to complete the purchase of the 687,228

16  shares of stock issued to them on or about February 11, 2005.

17      Plaintiff HIMC claims irreparable harm from the release of 689,228 shares of HIMC stock for

18  sale to the general public: (1) shares would be available for sale to third parties and would be

19  unavailable for return to HIMC under its claims for rescission; (2) the stock price would decline if the

20  market were flooded with new stock in HIMC, which trades episodically and lightly; (3) the stock,

21  once released, would be deemed paid for, and the Veripay group members would have unearned,

22  undeserved, and excessive voting power at the next shareholders meeting.

23      ***Defendants' Contentions***

24      Defendants contend that the Defendants formed Veripay to market HIMC's card processing

25  services to companies in the direct response marketing industry.  While Defendants agree that the

26  ORDER - 3

parties entered into an agreement, they contend that there was no payment requirement applied to the issuance of the first 689,226 shares to the Veripay designees.  Moreover, Defendants contend that they had no knowledge of the HIMC Board Resolution requiring Veripay Defendants to pay $0.125 per share for the 689,226 shares that HIMC issued.

Defendants agree that the parties entered into an agreement – the Memorandum of Understanding – effective February 9, 2005 (attached to the Complaint as Exhibit 4.), which provided that in exchange for a 51% share of Veripay, HIMC would transfer 1,364,667 shares of HIMC common stock to Veripay shareholders on the following schedule: 689,226 HIMC shares to Veripay upon execution of the contract, and the balance of 675,441 HIMC shares conveyed to Veripay upon Veripay generating gross transaction volume of $100,000,000 in a 24-month period dated from the first sales contract entered by Veripay.  Only the first transfer of 689,226 shares of stock was issued.

Defendants contend that they immediately went to work to market and promote HIMC as a merchant account credit card processing firm to the direct response marketing businesses that they knew.  Defendants assert, however, that HIMC was unable to enter into any contracts with the clients that Veripay delivered to HIMC, because HIMC lacked the capacity to handle the new business, so they outsourced the business to other card processing firms.

Defendants argue that there is no showing of irreparable harm because Plaintiff's alleged irreparable injuries are speculative.  Moreover, HIMC has shown no likelihood of success on the merits, because the terms of the written contract are unambiguous, and parol evidence may be offered only to clarify ambiguities; HIMC offers no evidence that the Individual Defendants were required to pay $0.125 per share for their stock.

### *Analysis and Conclusion*

On the merits, there is a dispute about the price of the stock that issued to the Individual Defendants (the Veripay Defendants).  Defendants argue that the contract did not set forth any requirement for payment of the initial 689,226 shares, and that parol evidence is not admissible where

ORDER - 4

there is no ambiguity.  Nevertheless, there is evidence that the Veripay Defendants did submit checks in payment of stock in HIMC.  (Ex. 1 to the Complaint) There is also the inquiry from one of the Defendants named "Shai" inquiring about how much more each needs to send, and a response to that email setting out the amount.  It is also disputed that the Veripay Defendants performed that part of the bargain whereby Veripay would generate gross transaction volume of $100,000,000 in a 24-month period.

The irreparable harm cited by HIMC is sufficient for the purposes of issuing a preliminary injunction to maintain the status quo until the matter can be determined on the merits.  HIMC has raised serious questions and the balance of hardships tips in its favor.  There is a public interest element as well, in the release of a considerable amount of stock to be available for public trading or for voting purposes at a shareholders meeting.

Therefore, having considered the parties written submissions as well as having heard argument on the matter, the Court concludes that HIMC has made the required showing and that issuance of a preliminary injunction is appropriate with continuance of the $1,000.00, bond as required when the TRO issued.

NOW, THEREFORE, IT IS ORDERED:

1. Plaintiff HIMC Corporation's request for a Preliminary Injunction following the issuance of the Temporary Restraining Order [Dkt. # 8] is GRANTED;

2. Defendant FIDELITY TRANSFER CO. is restrained and enjoined from issuing new stock certificates to replace or substitute for certificates issued to Prem Ramchandani, Bar Lavi, Anna Sachs Bar Lavi, Avi Sivan, and Avraham Ovaidia for HIMC Corp. Shares, certificates Nos. 1442, 1443, 1444 and 1445 on or about February 11, 2005 or to take any other action that would remove or negate restrictive legends placed on said stock certificates;

3. PREM RAMCHANDANI, SHAI BAR LAVI, ANNA SACHS BAR LAVI, AVI

ORDER - 5

SIVAN, and AVRAHAM OVAIDIA are restrained and enjoined from taking any action to cause the removal of any restrictive stock legends on certificates Nos. 1442, 1443, 1444, and 1445 each for 172,307 shares of HIMC Corp. Stock, or to take any action to compel Fidelity Transfer Co. to issue new certificates to them without restrictive legends.

4. The $1,000.00 bond required for the TRO is appropriate security under Fed. R. Civ. P. 65(c) for this preliminary injunction.

DATED this 3rd day of August, 2007.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 6