UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HIMC CORPORATION, a Washington corporation,

    Plaintiff,

v.

PREM RAMCHANDANI and Jane Doe Ramchandani; SHAI BAR LAVI and ANNA SACHS BAR-LAVI; AVI SIVAN and Jane Doe Sivan; AVRAHAM OVAIDIA and Jane Doe Ovaidia; and FIDELITY TRANSFER CO., a Nevada corporation,

    Defendants.

Case No. C07-5342FDB

ORDER DENYING INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT and GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on motions for summary judgment filed by both Plaintiff and Defendants.

Briefly, Plaintiff HIMC is a small, publicly traded corporation that provides electronic check processing and credit card processing services. The Individual Defendants, also known as the "Veripay Group" have a dispute with HIMC concerning their receipt of restricted shares of HIMC stock, which they assert should be shares that can be freely traded in the market place. HIMC asserts that the Individual Defendants have not fully paid for the stock. Fidelity Transfer Co. is the transfer agent with respect to the stock at issue in this case.

Plaintiff seeks rescission of the February 11, 2005 stock issuance on the following grounds: (1) failure of Defendants to actually pay for the stock issued to them and to have done so within two years (by February 11, 2007); (2) failure to have satisfied their joint venture agreement to produce

ORDER - 1

one hundred million dollars in gross transaction volume for HIMC through a subsidiary known as Veripay; and (3) misrepresentation in the formation of the agreement of February 5, 2005 known as the "Memorandum of Understanding."

The Individual Defendants counterclaim alleging breach of contract against HIMC and seeking removal of the restrictions on the stock issued to them. The Individual Defendants also seek monetary damages as a result of HIMC's refusal to remove the restrictions.

## PARTIES' ARGUMENTS

The following is merely a brief summary of the parties' arguments, which arguments are not adopted by the Court and are stated merely to place the Court's discussion of the issues in context.

*Individual Defendants' Summary Judgment Motion*

In their motion for summary judgment, the Individual Defendants request a finding of liability against HIMC on their second counterclaim, which alleges breach of contract by HIMC; Individual Defendants also request removal of the restrictions on the stock issued to them plus monetary damages that have resulted from HIMC's refusal to remove the restrictions.

The Individual Defendants argue that the "Binding Letter of Intent" (BLOI) (Dkt. 88, Bar-Lavi Aff., Ex. 1) is the contract that established the terms of the joint venture and the creation of the new company, Veripay, to be owned 50-50 by HIMC and Pasa, Inc. The Individual Defendants argue that the BLOI also established that they would receive "upfront" 689,226 shares of HIMC stock at the price of $0.01 per share as the four individuals identified by Pasa, Inc. and an additional 675,441 shares of HIMC's common stock provided

> "Pasa, Inc., through its various companies, contacts and groups, brings $100,000,000.00 (one hundred million dollars) gross revenue to HIMC through New Co. [*i.e.* Veripay] in a period of 24 (twenth-four) months from the time of the establishment of New Co."

*Id.* Pursuant to the BLOI, the Individual Defendants assert that they tendered the contemplated price for the first "upfront" block of 689,226 shares of HIMC stock as stated in HIMC's Complaint:

ORDER - 2

> 17. On or about December 15 and 16, 2004 Prem Ramchandani, Avi Sivan, Shai Bar Lavi, and Avraham Ovaidia each issued a check for $1,723.07 payable to HIMC Corp. For four purchases of 172,307 shares of HIMC stock at $0.01 per share. A true and correct copy of the front of the checks is attached hereto and incorporated herein as Exhibit 1.

The Individual Defendants argue that next a document called in its first line of text "This binding Memorandum of Understanding" (MOU) (Complaint, Ex. 4; HIMC Memo, Adler Decl. Ex. 2), which was executed by Aaron McCann for HIMC and Shai Bar-Lavi for Veripay, created a contractual relationship between HIMC and Veripay upon terms described in the BLOI. The Individual Defendants assert that under the MOU, Veripay was to receive 689,226 shares of HIMC stock and that no further payment other than that already tendered was required as consideration for these shares.

Individual Defendants contend that HIMC ratified the Binding Letter of Intent of December 13, 2004 and the MOU of February 9, 2005 when on May 5, 2005, it entered into a third agreement titled "ADDITION TO MEMORANDUM OF UNDERSTANDING DATED FEB 9, 2005." This Addition to the MOU provided for additional forms of compensation to Veripay and stated: "This agreement adds to and does not in any way reduce the grant of shares specified in the Feb 9, 2005 MOU." (Dkt. No. 88,Attachment to Aff. of Bar-Lavi.)

Finally, the Individual Defendants argue that all of HIMC's remaining causes of action are without merit.

*HIMC's Summary Judgment Motion*

HIMC argues for a summary judgment ruling that finds that the shares of stock issued to the Individual Defendants was not completely paid for within two years from the date it was issued pursuant to the February 9, 2005 Memorandum of Understanding, and that, therefore, the securities must be returned to HIMC. HIMC argues that the Memorandum of Understanding must be rescinded based on mutual misunderstanding.

ORDER - 3

HIMC requests that Defendants' second counterclaim be dismissed as HIMC has no duty to lift the restrictions on the stock; HIMC requests that Defendants' first counterclaim be dismissed on a finding that HIMC did not breach the Memorandum of Understanding.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if the moving party establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Inferences drawn from the facts are viewed in favor of the non-moving party. *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

Summary judgment is proper if a defendant shows that there is no evidence supporting an element essential to a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Failure of proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can exist and summary judgment is mandated. *Celotex*, 477 U.S. 317, 322-23 (1986). The nonmoving party "must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**DISCUSSION**

Although letters of intent may have some utility under certain circumstances, it is understandable why they have been characterized as "an invention of the devil." *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 152 Ill.Dec. 308, 565 N.E.3d 990, 1009 (1990); Corbin on Contracts, revised edition by Joseph M. Perillo §1.16 (1993). Letters of intent may be useful when there are many tasks to be accomplished (checking into any legal impediments, arranging financing or other preliminary matters); while it is not itself a contract, it may establish the good faith of the parties to continue negotiations to achieve goals stated in the letter.

ORDER - 4

In this case, there were steps to be taken in order for the parties to receive their respective benefit of the bargain: importantly, a new company was to be created (Veripay) and shares of stock were to be issued and paid for. Obviously, there are steps to be taken to set up a new company, and issuing shares of stock requires satisfaction of certain formalities as well, including a resolution by the corporation's board of directors. Thus, it is understandable that Aaron McCann, Chief Executive Officer of HIMC and Shai Bar-Lavi for Pasa, Inc. – representing the entities that would be partners in the new company, Veripay – would execute a document entitled "Binding Letter of Intent."

The "Binding Letter of Intent" (BLOI) is dated December 3, 2004, and was signed by Bar-Lavi and McCann, respectively, on December 7 and 13, 2004. In addition to setting forth the creation of a new company (Veripay) to be owned 50/50[1] by HIMC and Pasa, Pasa would designate four individuals to receive HIMC common stock at $0.01 a share in the amount of 689,226 shares for $6892.26 total costs. Also, the "Binding Letter of Intent" provided that in the event that Pasa, through the new company (Veripay), brings $100 million gross revenue within 24 months from the establishment of the new company, Pasa will receive another 4.9 percent of HIMC common stock.

On December 15 and 16, 2004, four checks, each in the amount of $1,723.07, were issued by Defendants Prem Ramchandani, Avi Sivan, Shai and Anna Bar-Lavi, and Avraham Ovadia to HIMC Corporation. These checks total $6892.28 (two cents more than the total amount in the BLOI) and reflect the $0.01 share price in the Binding Letter of Intent.[2] It is undisputed that HIMC has never cashed these checks.

At this point, the Individual Defendants treated the "Binding Letter of Intent" as an offer and tendered their performance as to the quoted price. HIMC, however, has never exercised dominion or

---

[1] This 50/50 division would change pursuant to the MOU to a 51% interest in Veripay to be purchased by HIMC.

[2] The total amount paid reflects 689,228 shares (rather than 689,226 shares) at $0.01 per share.

ORDER - 5

control over the Individual Defendants' funds by cashing the checks, and so has not accepted this tender. Corbin on Contracts, Rev. Ed. By Joseph M. Perillo §3.21 p. 425 (1993). Between the time a check is written and when it is cashed, things can happen and the funds may no longer be available, so until the check is cashed, a person holding the check merely holds the power of acceptance of the tender.

On February 9, 2005, Aaron McCann, for HIMC and Shai Bar-Lavi, now for the new company, Veripay, LLC, signed another document, which references itself as "this binding Memorandum of Understanding (MOU)," which is generally consistent with the idea of the "Binding Letter of Intent." The MOU reflects that HIMC will purchase a 51%[3] interest in Veripay and in return HIMC will transfer 1,364,667 shares of HIMC common stock to the "current shareholder (or its designee) of VERIPAY."[4] A schedule for the transfer of shares was set forth: 689,226 upon execution of the MOU and the balance of 675,441 shares to Veripay's current shareholders, upon Veripay generating gross transaction volume of $100 million in gross transaction volume within a 24-month period from the date of the first sales contract entered by Veripay. No sales price for the 689,226 shares was mentioned.

The MOU is questionable as a contract between these parties, because by itself, it does not indicate important elements – particularly, share price – unless one reads it in conjunction with the BLOI, which is between HIMC and Pasa, not Veripay. The MOU details the schedule for the transfer of HIMC stock – 689,226 shares to be issued upon execution of the MOU – and specifies a change regarding the condition for the additional shares: from "Pasa brings *gross revenue* through NewCo in a period of 24 months from the establishment of NewCo." (Binding Letter of Intent) to

---

[3] Note change in percentage from the 50/50 division for HIMC and Pasa recited in the BLOI.

[4] While the singular is used here, later in the document it refers to the balance of shares being conveyed to the "current shareholders."

ORDER - 6

"upon Veripay *generating gross transaction volume* of $100 Million in 24 months of the first sales contract entered by Veripay." The parties have not changed their positions as of the issuance of the MOU: HIMC still has not accepted the Individual Defendants' tender of the share price mentioned in the BLOI, because HIMC has not cashed the four checks and received the cash. Neither, at this time, have the Individual Defendants received any of the 689,226 shares mentioned in the BLOI. There is no contract between the parties.

On the same date as the MOU, February 9, 2005, the HIMC Board issued a resolution signed by Secretary Pamela Jean Ehli and Director Virgil T. Llapitan. The Resolution provided for 689,228[5] shares of HIMC restricted stock for $86,153.50 at a rate of $0.125 per share to Prem Ramchandani, Shai Bar-Lavi, Avraham Ovadia, and Avi Sivan. Importantly, the Resolution provided:

> The $86,153.50 will be paid from net proceeds, after expenses, from VeriPay Inc. This stock is tied to performance of VeriPay that if VeriPay doesn't meet the $100,000,000.00 in revenue minimum in 24 months all of the stock issued shall be forfeited and returned back to HIMC.

(HIMC Memo, Adler Decl. Ex. 1) Thus, the HIMC Board Resolution sets a higher share price than the BLOI and contemplates issuance of restricted stock. Additionally, it ties the retention of the HIMC stock, which is to be purchased out of the net proceeds, to Veripay's performance of $100 million in revenue in 24 months or the stock would be forfeit.

Of course, this Resolution is not a contract between HIMC and the Individual Defendants or Veripay. The Resolution is, however, a necessary step toward the issuance of shares of HIMC stock to the individual defendants. RCW 23B.06.210 provides that any issuance of a corporation's shares must be authorized by its board of directors. Moreover, Fidelity Transfer's normal procedure in issuing unregistered securities, such as HIMC's, was to require a Resolution from the Board of Directors authorizing the issuance of the securities on behalf of the company, which resolution set

---

[5] See Note 2 re discrepancy in number of shares, but the price is correct at $.125 per share.

ORDER - 7

forth the terms of the issuance. (Decl of Sadowski, Fidelity Office Manager, Ex. 2 to HIMC Memo.) So HIMC was moving forward according to the idea illustrated by the BLOI and the MOU, and as HIMC requested, Fidelity issued four securities, each for 172,307 shares of HIMC stock (totaling 689,228) with a notification that the stock was issued pursuant to Rule 144 restrictions to Prem Ramchandani, Avi Sivan, Anna Sachs Bar-Lavi, and Avraham Ovaidia,. *Id.* There is no question that the HIMC restricted securities were issued and that the Individual Defendants received them.

The question now becomes whether the terms stated in the Resolution were communicated to the Individual Defendants. At the time of the Board Resolution, the Individual Defendants had tendered their checks (of $1723.07 each at $0.01 per share, which works out to 689,228 HIMC shares) acting on the BLOI as if it were an offer. HIMC, however, did not accept the tender because they did not cash the checks. There is no contract at this point. Did HIMC state another offer to the Individual Defendants reflecting the HIMC Board Resolution price, and thus counter the Individuals' tender of the checks reflecting the BLOI price? Email correspondence on February 5, 2005 from Luke D'Angelo[6] to "Shai" and others who appear to be Aaron McCann and some of the Individual Defendants, reflects that "HIMC has encountered an issue involving the stock, the company cannot issue .01 cent stock, the company must adjust the purchase price to .125 cents, that is the lowest it can go due to cheap stock rules." (HIMC Memo. Adler Decl. Ex. 7.) The email continued:

> That being said since the comapany [sic] has your checks, we can adjust the stock option agrement [sic] to .125 cents,and pay for the difference out of the gross in veripay [sic] that way you do not have to come out of pocket anymore than you have, or you can write a check for the difference, so the company can issue the stock ASAP, but until the company actually recieves [sic] .125 cents a share thier [sic] counsel will not let them issue stock.

*Id.* Shai responded on February 6, 2005 "Please let me know thw [sic] amount that we each need to send. Will talk on Monday." (*Id.* Ex. 8.) Email from Luke D'Angelo dated Monday, February 7,

---

[6] The D'Angelo name first appears at the bottom of the pages of the BLOI: "APPROVED BY LUKE D'ANGELO". He evidently carries some weight with the parties, but his role is never explained.

ORDER - 8

2005 detailed to Shai Bar-Lavi (and, apparently, Aaron McCann and others) the additional amount needed to meet the new share price. ( *Id.* Ex. 8 )

This email from a nonparty, Luke D'Angelo, is problematic and cannot be read as a counteroffer from HIMC. It neither explains who Luke D'Angelo is nor does it indicate that he has the power to make an offer on behalf of HIMC to either Veripay or the Individual Defendants. Moreover, there is nothing to indicate that Veripay or the Individual Defendants accepted this new price term. There is only the request from "Shai" as to the "amount we each need to send." There is nothing to reflect that this is acceptance of the new price term by Shai Bar-Lavi, nor is there anything that purports to give Shai the power to bind the other Individual Defendants to the new price term. This email exchange reflects no agreement.

To this point, then, there is still no agreement between the parties. Then, despite any confidence placed in Luke D'Angelo, and contrary to his email advice that the shares cannot issue until HIMC receives the $.125 share price, the following occurs.

On February 11, 2005, pursuant to the HIMC Board Resolution of February 9, 2005, the parties agree that HIMC caused to be issued to the Individual Defendants 689,228 shares of HIMC restricted stock through its transfer agent, Fidelity Transfer Co. It is undisputed that no further payment was tendered for the restricted stock issued, and HIMC still has not cashed the checks. At this point, HIMC has not accepted the Individual Defendants' tendered checks as payment, and although the Individual Defendants have restricted shares of HIMC stock, they object contending that they should have shares that may be freely traded in the market. If the issuance of the restricted shares is taken as a counter-offer from HIMC, the Individual Defendants have not indicated acceptance by either making or attempting to make further payment. There is still no agreement.

The Individual Defendants concede that the parties' efforts during March and April 2005 did not result in revenues to HIMC, but it is disputed whose fault it is. (Bar-Lavi Aff. ¶8.) Whose fault

ORDER - 9

it is, is irrelevant, however, except as to indicating acceptance of the restricted shares and the new price, since there is no agreement between the parties to this point. Then, the following occurs.

On May 5, 2005, Aaron McCann for HIMC and Shai Bar-Lavi for Veripay LLC signed a document entitled "Addition To Memorandum of Understanding Dated February 9, 2005." This Addition to the MOU stated that it did not in any way reduce the grant of shares specified in the February 9, 2005 MOU and indicated that Veripay would receive options for additional HIMC shares under certain circumstances (generation of fees within a specified period).

The Addition to the MOU does not create an agreement between the parties as to the price of the securities or the nature of the securities issued. The most that can be said about the Addition to the MOU is that it memorializes some hope that the parties' big idea of a joint venture would generate income. Again, no contract was formed. Nothing further of note happened toward securing a contract between HIMC and Veripay, and this lawsuit was filed on July 13, 2007.

Aaron McCann for HIMC and Shai Bar-Lavi, first for Pasa and then for Veripay, tried to set forth a plan for a joint venture that would be remunerative for HIMC, Veripay, and Veripay's four designees, the Individual Defendants. The documents that they executed did not result in formation of contracts because there was never acceptance of their terms by both sides. The documents themselves are forward looking and the fact that terms changed as the parties went along, indicates the inchoate nature of the parties' idea despite the effort to inculcate a sense of gravity in the documents by labeling them "binding." HIMC and Pasa and Veripay may each have been earnest in working toward a joint venture, but they did not execute a document that contained the important terms of an agreement, that was accepted by each party, at any point after it might have been said that the preliminary groundwork was laid for the joint venture to proceed. There was no agreement between HIMC and Pasa or Veripay upon important terms – price for the stock or the nature of the stock to be issued to the four Veripay designees. There was merely a tender of checks reflecting a price per share, which HIMC never accepted; and there was an issuance of HIMC restricted stock,

ORDER - 10

which is not what the Individual Defendants contend they bargained for. These parties never got beyond the "offer" stage of contract formation.

**CONCLUSION**

The summary judgment motions of both parties must be denied in accordance with the foregoing discussion.

The Individual Defendants seek summary judgment in their favor on the Complaint and on their Second Counterclaim, which asserts breach of contract against HIMC, and Individual Defendants seek removal of the restrictions of the stock issued to them, plus damages as a result of HIMC's refusal to remove the restrictions. Because as discussed in the foregoing section, there is no contract between the parties, the Individual Defendants' summary judgment motion must be denied in full.

HIMC seeks summary judgment on the following bases, and the Court rules as follows, according to the foregoing discussion:

(1) Because as discussed in the foregoing section, no contract was formed between the parties, HIMC's request for payment for the 172,307 shares of Rule 144 restricted stock issued to each of the Individual Defendants, *i.e.*, 689,228 total shares, must be denied;

(2) HIMC's request for return of securities issued pursuant to the February 9, 2005 Memorandum of Understanding is granted;

(3) HIMC's request for rescission of the Memorandum of Understanding as a contractual agreement based on mutual misunderstanding is denied, as there is no contract to rescind;

(4) HIMC's request for dismissal of Individual Defendants' Counterclaim II concerning lifting the Rule 144 restrictions on the HIMC stock issued to them is granted;

(5) HIMC's request for dismissal of Individual Defendants' Counterclaim I for breach of contract is granted.

ORDER - 11

The parties' squabble over HIMC's summary judgment motion, which was five pages over the 24-page limit and filed without the Court's permission, is resolved by granting HIMC's motion for permission to file such document nunc pro tunc.

NOW, THEREFORE, IT IS ORDERED:

(1) The Individual Defendants' Motion for Summary Judgment [Dkt. #s 89, 86, & 87] is DENIED;

(2) HIMC's Motion for Summary Judgment [Dkt. # 91] is GRANTED in part and DENIED in part as set forth above;

(3) Plaintiff's Motion for Permission, Nunc Pro Tunc, to File Over-length Motion for Summary Judgment [Dkt. # 101] is GRANTED.

DATED this 25th day of November, 2008.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 12